## Leet v. County Board of Education of Oldham County.

(Decided March 23, 1923.)

### Appeal from Oldham Circuit Court.

1. Schools and School Districts—Defeat of School Bond Issue Held not Revocation of Consolidation.—In taxpayer's suit to enjoin county board of education from issuing bonds authorized at a consolidated school district election, plaintiff's contention that since, at a prior election submitting the same issue, the proposition to issue the bonds for the same purpose was defeated, such defeat was a revocation by the voters of the order of consolidation made by the board of education prior thereto, held without merit.

2. Schools and School Districts—Meeting to Order Issuance of Bonds Authorized at Election May be a Specially Called One.—In taxpayer's suit to enjoin county board of education from issuing bonds authorized at a consolidated school district election, plaintiff's contention that the order of the board of education, made at a meeting held soon after the authorizing election, by which order the issuance of the bonds was provided for, was invalid, because that meeting was a specially called one, and not a regular one, held without merit, in view of Ky. Statutes, sections 4433a-1, 4433a-2.

3. Schools and School Districts—That Appointed Officers Voted for Bond issue Held not to invalidate Bond Issue Election.—In taxpayer's suit to enjoin county board of education from issuing bonds authorized at a consolidated school district election, plain-

tiff's contention that, since the poll or tally sheet showing the result of the election showed that all the appointed officers voted in favor of the bond issue, the election was void for that reason, held without merit; no unfairness or fraud in the election being alleged.

ROBERT T. & WM. J. CROWE for appellant.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On the 25th day of January, 1923, the County Board of Education of Oldham county, by an order duly made and spread upon its records, called an election to be held in the Liberty consolidated school district in that county on February 6, 1923, between the hours of 10 a. m. and 5 p. m., for the purpose of submitting to the legal voters therein the question as to whether the district would issue bonds in an amount not to exceed twelve thousand dollars ($12,000.00) "for the purpose of providing suitable grounds, school buildings, furniture and apparatus" for the use of the district.

Printed posters containing notice of that election and signed by the chairman and secretary of the board, not less than one foot square, were duly posted in the district at a dozen or more public places therein and it was also inserted one time in the "Oldham Era," a weekly newspaper published in the county and of general circulation therein, all of which was done as much as ten days before the election. At the election 142 votes were cast in favor of the issuing of the bonds and 63 votes against the proposition. The election returns were duly canvassed and certified to the County Board of Education and it was preparing to issue the bonds when plaintiff and appellant, James Leet, a taxpayer in the district, brought this suit against the board and the members thereof to enjoin it or them from doing so upon thirteen different grounds set out in the petition. The court sustained a demurrer filed thereto and upon plaintiff declining to plead further the petition was dismissed, from which judgment he has appealed. We have not been favored with a brief for the defendants and appellees, but in brief filed for plaintiff (appellant) each of the grounds are expressly abandoned except numbers 1, 3, 7 and 13, and we will dispose of them in the order named.

In ground (1), it is claimed that the consolidation of the district on November 5, 1921, was and is void because the order of the Board of Education by and through which

it was done is too vague, indefinite and uncertain, and
further, that at an election held therein on April 8, 1922,
submitting the same issue here involved the proposition
to issue the bonds for the same purpose was defeated
and it is claimed that such defeat was a revocation by
the voters of the order of consolidation made by the
board of education prior thereto. The order consolidat-
ing the district was made by the board after it had been
petitioned to do so by fifty patrons and taxpayers of
the school residing therein, and the language of the order,
after reciting the filing of the petition, says that the
prayer of the petition is granted and the Liberty con-
solidated school district is created, which is "bounded
as follows." The order then contains a minute and de-
tailed described boundary of the consolidated district.
It is, therefore, difficult as well as impossible for us to
see any well grounded foundation for this objection;
none is pointed out in brief and surely counsel do not
consider it meritorious. The other portion of this (the
first) ground is likewise without merit, since we find
nothing in the statutes, either expressly or by the slight-
est intimation, supporting it. If an adverse result of an
election called by a municipality for the purpose of bond-
ing it within the limitations of the law for a legitimate
purpose could be given the effect to abolish the muni-
cipality then the experiment of holding such elections
by the promoters thereof would be exceedingly hazard-
ous and would put it in the hands of the voters, with-
out statutory authority therefor, to undo that which was
done by the proper governmental agency having charge
of the particular subject matter and which was done by
it in furtherance of the particular governmental project.
We are cited to no case, either domestic or foreign, at-
taching any such results to an election whereat the pro-
posed bonded indebtedness was defeated. Without such
a provision contained in any statute, and in the absence
of any adjudication so holding and, as we think, without
any reason therefor, we are unwilling to give our assent
to any such contention. The proposition may have been
defeated because in the opinion of the voters there was
no necessity therefor. They may have believed that the
district was already sufficiently provided in those re-
spects; or they may have been willing to continue with
the facilities the district then had whether adequate or
not. But whatever may have prompted the adverse vote
it surely could not be given the effect of a referendum to

the voters as to whether the district should or should not longer continue, and this ground is therefore denied.

The third ground relied on is the same as the first part of ground (1), above considered, and nothing further need be said concerning it.

The seventh ground relied on attacks the order of the Board of Education made on February 13, 1923, whereby the issuance of the bonds was provided for because that meeting of the board was a specially called one and not a regular one. No statute, no decision and no sound reason is advanced for this objection. Section 4433a-1 of the Kentucky Statutes (the one authorizing this character of election), and the one immediately succeeding it, was enacted at the 1920 session of the legislature and is chapter 45 of the Session Acts for that year, page 199. The provision for the creation of consolidated districts was first enacted in 1908 and is section 17 of chapter 56, page 133, of the Acts for that year, and is now section 4426a-5 of the present Kentucky Statutes, and it is the same as section 80 of chapter 24, page 162, of the Acts of 1916, which latter act was a recodification of the statutes of this Commonwealth relating to common schools. Neither of the two last mentioned statutes provided for the issuing of bonds by the consolidated district for the purpose hereinbefore mentioned and which provision was made for the first time by the legislature of 1920, as we have before shown. The action of the board in directing the issuing of the bonds after they are voted is purely ministerial and it necessarily should be done as soon after a favorable election as possible so that the contemplated improvements might be commenced and completed and the district get the benefit therefrom at the earliest moment consistent with valid procedure. Unless, therefore, the statute contains something requiring the order by the County Board of Education now complained of to be made at a regular meeting, we can conceive of no reason why it should not be done at a special one. We, therefore, find no merit in this contention.

The same objection is made in ground (13), wherein it is alleged that the order of the County Board of Education appointing the officers to hold the election was made at a special session. No greater reason is advanced for this objection than is done in support of the seventh one above considered, and for the reasons therein stated it

must be denied. It is furthermore contended, however, in ground (13), that the poll or tally sheet showing the result of the election reveals the fact that all of the appointed officers voted in favor of the bond issue and for that reason the election was void, which to our minds is so completely unfounded that we find it difficult to discuss it. It is not intimated, much less alleged, that the election was unfair or in any wise fraudulently conducted, nor that the result thereof was in the least influenced by the sentiments of the officers relative to the proposition voted upon, except perhaps to the extent of their individual votes. Neither is it alleged or intimated that any of the members of the County Board of Education designedly appointed officers because of their favoring or opposing the proposition submitted. The objection, therefore, is reduced to the single and narrow proposition that an election is void in all cases if the officers conducting it favor one set of candidates as against the other, or one side of a submitted proposition as against the other side. The suggestion is a novel one and is not sustained by any principle governing the law relating to elections, that we have been able to find. Of course, if officers of an election because of their entire agreement as to the person or persons to be voted for, or the proposition to be endorsed or rejected or for any other cause should violate their oaths and allow their sympathies to influence them to such an extent as to destroy the fairness of the election and cause them to fraudulently conduct it, or to falsely certify the results, it could be attacked on those grounds, but in the absence of such showing the result of the election will not be affected because of any such unanimity of sentiment on the part of the officers.

The other grounds relied on, as we have hereinbefore stated, are not discussed or referred to in briefs, but without repeating them here we deem it only necessary to say that they are each as much devoid of merit as those that we have mentioned and to some extent discussed.

Finding no error in the judgment it is accordingly affirmed.